JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON (Cal. Bar No. 266973)
Assistant United States Attorney
Chief, Criminal Division
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4443
     Facsimile: (213) 894-0141
     E-mail:    lindsey.dotson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>          v.<br><br>JESSE ALLEN LINDSEY,<br><br>     Defendant. | No. CR 2:24-00339-MWF<br><br>GOVERNMENT'S SENTENCING POSITION |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Lindsey Greer Dotson, hereby files the government's sentencing position.

///

///

///

This sentencing position is based upon the attached memorandum of points and authorities, the files and records in this case, the Declaration of Lindsey Greer Dotson, and such further evidence and argument as the Court may permit.

Dated: February 13, 2025          Respectfully submitted,

JOSEPH T. MCNALLY
Acting United States Attorney

      /s/ Lindsey Greer Dotson
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

At the height of the Stop Asian Hate movement in 2021, a racially motivated attack sparked outrage.  In an unprovoked assault captured on video, defendant JESSE ALLEN LINDSEY targeted a middle-aged Asian woman on her way to work because of her race.  He followed the victim, shouted vile racial slurs at her, and then punched her in the head so hard that she careened into the street.  After the punch, defendant stood over the victim's body, called her the N-word, and left her bloodied, face down in the street.  Days later, when defendant saw news reports about the attack, he fled to avoid apprehension.  When finally located (he was in prison on unrelated charges), defendant justified the attack with self-serving, false claims riddled with racial animus.

For this conduct, a low-end United States Sentencing Guidelines sentence of 51 months' imprisonment, followed by three years' supervised release, is necessary to adequately punish, deter, and provide justice for a victim who has been forever scarred by this attack.  Such a sentence is particularly important to protect the public given defendant's violent and escalating criminal history.  Prior, far shorter sentences have failed to impress upon him the severity of his crimes and need for change.  The government also seeks an award of $270.56 in restitution for recent, unreimbursed medical expenses, which defendant does not contest.

///

///

///

**II.   STATEMENT OF FACTS[1]**

   **A.   While Shouting Racial Slurs, Defendant Punches the Victim in the Head and Leaves Her Bloodied in the Street**

Shortly before 1:00 a.m. on June 14, 2021, a middle-aged Asian woman (the "victim") was walking to work in Culver City, just as she had done for the past 25 years. She was five feet tall and weighed about 120 pounds. She had a soda in hand and was alone.

Surveillance video shows defendant, a white man in his mid-thirties, following the victim. Defendant was over six feet tall and weighed about 250 pounds. He was transient and struggling with substance abuse.



Defendant asked the victim for a lighter or cigarette. Frightened and alone, the victim said she had neither and kept walking. Defendant became enraged. He continued following her and began shouting racial slurs. He yelled, "You motherfucking Asian

---

[1] The facts are based upon defendant's plea agreement (dkt. 18), the presentence report (dkt. 22), and the exhibits attached to the Declaration of Lindsey Greer Dotson ("Dotson Declaration").

2

guy, turn around, I'm gonna talk to you." Defendant said something about the victim being "Korean" and shouted, "You motherfucking Asian guy, you don't belong here."[2]

Moments later, defendant brutally punched the victim in the head. Although defendant's earlier statements were not captured on video and are based upon the victim's account, surveillance cameras captured audio and video of the attack itself, including defendant's statements during that attack. In the video, defendant walked up to the victim's right side and shouted, "You can't say hi to a motherfucking white boy?" Defendant then violently punched the victim in the head, which launched her into the street. While standing over the victim, defendant shouted, "You hear what I said, [N-word]? I said good morning, bitch!" Defendant then walked away, leaving the victim bloodied, face down in the street.





---
[2] Defendant believed the victim was an Asian man.

3

 

Emergency personnel transported the victim to the hospital, where she received 11 stiches to her head and ear. She was unable to work for about a month. Even after returning to work, her physical injuries persisted. She suffered ongoing ear and head pain for about a year. Today, while her physical injuries have healed except for a scar behind her ear, lasting psychological trauma remains, as detailed herein.

      **B.    Defendant Admits Punching the Victim Because of Her Race, Fleeing California to Avoid Police, and Later Fabricates Self-Serving "Defenses" Laden with Racial Animus**

Shortly after the attack, the Culver City Police Department identified defendant as the likely perpetrator but could not find him. In late February 2024, police learned he was serving a 16-month sentence in state prison for offenses unrelated to the attack, namely, grand theft and being a felon/addict in possession of a firearm.

In March 2024, law enforcement officers spoke with defendant in a Mirandized interview that was audio and video-recorded. Defendant

4

admitted punching the victim, whom he thought was an Asian man. He also admitted fleeing California when he saw new reports about the attack. He knew hate crimes receive enhanced penalties and wanted to avoid prison.

During his interview, defendant tried to tee up multiple (often conflicting) defenses to elicit sympathy from the officers and avoid prosecution. Defendant said he was high on acid and had no idea what he was doing during the attack. When confronted with harmful facts, such as his racial slurs captured on video, he claimed to have no memory of the night and leaned into a potential defense that he was severely under the influence. At the same time, he conveniently recalled numerous, specific details -- many false -- that he believed exculpated him.

For instance, defendant said he punched the victim because she purportedly said, "fuck you" to him after he merely said, "good morning, how are you?" Defendant repeatedly told the interviewers that he was simply exchanging pleasantries with the victim. Although feigning to have no memory of the incident, defendant later recounted numerous other details, such as the victim's gait and appearance, where the attack occurred, and what he was thinking when he encountered her.

Defendant also claimed self-defense -- a "defense" clearly fabricated based upon the audio and video of the attack, as well as the size differential between defendant and the victim. Defendant's purported reasons for needing to defend himself reeked of prejudice. He said the victim was Asian and, for that reason, thought she was going to pull "some Jet Li shit." (Jet Li is a Chinese actor known for his martial arts ability.) Defendant thought that "motherfucker"

5

(the victim) was going to "whoop [his] ass" because "those little dudes" (Asian men) are "fucking crazy" and "have fight in them." Defendant purportedly believed he was going to get attacked because the "little Asian person" was "mouthy" and looked like a "gangbanger."

Nothing in the video corroborates any of defendant's self-serving statements. Indeed, the victim is clearly trying to escape defendant who stalks her and then attacks with a surprise punch to the head.

### C. The Victim Sustained Serious Physical Injuries and Has Suffered Lasting Psychological Trauma for Years

Defendant's injuries did not end with an ambulance ride to the hospital and 11 stitches. As her victim impact statement filed under seal makes clear, she has suffered psychological trauma and hardship for years following the attack. "I'm not the same person anymore," the victim says. (Dotson Declaration, Ex. A at 1.) What were once normal daily activities -- walking to work, riding a bus, and encountering strangers at work -- are now weighty tasks that can be triggering and debilitating. Despite years of treatment, "fear and anxiety are always present." (Id.) "I don't know if I'll ever be the same again." (Id. at 8.)

///
///
///

6

**III. ARGUMENT**

    **A.   Defendant's Guidelines Range Is 51 to 63 Months**

    The government concurs with Probation's Guidelines calculations in the Presentence Report ("PSR"):

    Base Offense Level:    14    [U.S.S.G. § 2A2.2]

    Hate Crime Motivation:  +3    [U.S.S.G. § 3A1.1(a)]

    Bodily Injury:       +3    [U.S.S.G. § 2A2.2(b)(3)(A)]

(Dkt. 22 at 3.) Following acceptance of responsibility, defendant's Total Offense Level is 17. (Id.) With 21 Criminal History points, defendant falls in Criminal History Category VI. (Id. at ¶ 54.) His Guidelines range is 51 to 63 months' imprisonment.

    **B.   Just Punishment Requires a Significant Sentence Given the Serious Nature and Circumstances of Defendant's Crime**

    In determining a sufficient sentence, courts must consider the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). Courts also must impose sentences that reflect the seriousness of the offense, promote respect for the law, and provide just punishment. 18 U.S.C. § 3553(a)(2). The facts of this case and egregiousness of defendant's conduct warrant a 51-month sentence.

    Driven by hate, defendant's attack was disturbing and forever changed one woman's life. Beyond physical scars, defendant left emotional trauma so great that it lingers nearly four years later. The victim thought she could die and is now a changed person who lost her sense of safety. She continues to struggle both at work and in her personal life. A lengthy prison sentence is imperative for just punishment and to send a message to defendant that hate crimes are serious and carry meaningful punishment.

A significant sentence is also important for the community, both to deter would-be offenders and signal that violent, bias-motivated offenses will not stand.  By attacking an innocent woman simply because of her race, defendant sent a message of hate that rattled not just the victim, but a vulnerable community.  Media coverage noted that this incident "mark[ed] the latest in a wave of attacks on Asian Americans across the country during the coronavirus pandemic" and occurred during a "nationwide spike" of "anti-Asian hate crimes." <u>Asian American woman assault in Culver City in possible hate crime</u>, Los Angeles Times (June 16, 2021), <u>available at</u> https://www.latimes.com/california/story/2021-06-16/culver-city-police-investigate-possible-hate-crime-after-asian-american-woman-is-assaulted.  By imposing a significant sentence, this Court has the power to fight that discriminatory message and show that such crimes are not tolerated and will be met with severe consequences.

**C.   Defendant's Lengthy and Escalating Criminal History Justifies a Significant Sentence for Specific Deterrence to Protect the Public from Defendant's Violence**

The Court must also consider defendant's history and characteristics.  18 U.S.C. § 3553(a)(1).  At just 38 years of age, defendant has 21 Criminal History points.  (Dkt. 22 at ¶ 54.)  He has had numerous arrests and 13 criminal convictions for serious crimes -- felon in possession of a firearm, narcotics offenses, grand theft, domestic battery, and attempted extortion.  (<u>Id.</u> at ¶¶ 36-73.)  And those crimes have only escalated in severity over time.  Indeed, his most recent convictions -- felon in possession of a firearm and grand theft -- are some of his most significant offenses and resulted in a 16-month prison sentence.  (<u>Id.</u> at ¶¶ 50-51.)  Although defendant

8

suffers from substance abuse, the unfortunate truth is that his addiction fuels a rage that endangers the public. Given defendant's proclivity for violence and the failure of lesser sentences to adequately deter him, a 51-month is more than warranted.

### D. Restitution for Unreimbursed Medical Expenses Is Mandatory

Where a victim suffers bodily injury from a crime of violence, the Mandatory Victim Restitution Act requires restitution for "an amount equal to the cost of necessary medical and related professional services and devices relating to physical, psychiatric, and psychological care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment." 18 U.S.C. § 3663A(b)(2)(A). Defendant does not contest that restitution in the amount of $270.56 is owed to the victim for recent, out-of-pocket costs for medical appointments and prescriptions not covered by insurance.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 51 months' imprisonment, followed by three years' supervised release, and order him to pay $270.56 in restitution.